FRANCIS COLLINS, *Appellant, v.* HENRY O. PERKINS.

*Officer. Execution. Trespass. Damages. Evidence.*

If property attached be used by the officer, he thereby becomes a trespasser *ab initio,* and is liable *prima facie* for its full value: but if it be received back by its owner, or is legally disposed of upon an execution against him, issued in the suit in which it was attached, the officer is liable only for the damages occasioned by such use.

The neglect of an officer to make a demand of the debtor before proceeding to levy an execution, does not invalidate the levy.

If property be attached in one town and taken into another by the officer, and there held until execution issues against the owner, which is there levied upon it, the advertisement and sale upon the execution should be made in the town where the property was originally attached.

Collins *v*. Perkins.

The statement in an officer's return of the levy of an execution, that he advertised the property to be sold at a certain place, will be construed to mean that the advertisement was also set up at that place, and the return will be sufficient.

In trespass, evidence which tends merely to mitigate the damages, but not to justify the trespass, is admissible under the general issue.

TRESPASS for taking a sled, ox yoke, ring, staple, two chains, and a pair of oxen. Plea, the general issue, and trial by the court, at the September Term, 1858,—ALDIS, J., presiding.

The plaintiff's testimony tended to show that the defendant, as an authorized person, attached upon a writ in favor of Wm. P. Merriam against the plaintiff, the property described in the declaration; that after taking it he occasionally used it without the consent of the plaintiff, and finally sold the oxen as his own property; that the copy of the writ left with the plaintiff by the defendant, on serving the writ, had no name signed to it as justice of the peace, and that no other copy was left with him; that he had no other notice of the pendency of the suit in favor of Merriam against him; and that that suit was continued at the request of the defendant, and of Merriam, without any appearance by, or the consent or knowledge of the present plaintiff, or any other legal cause. The plaintiff also introduced a copy of the record of the judgment, execution and defendant's return on the execution in *Merriam* v. *Collins*, by which it appeared that the property in question was originally attached by the defendant upon the writ in that case, in the town of Mendon, where the plaintiff resided. The defendant's return upon the execution was dated at Rutland, and set forth that he levied the same upon the property in question, on the 2d of March, 1857, and on the same day advertised it to be sold at public auction at Harvey Wilkins', in Mendon, on the 11th of April, 1857, and then proceeded to set forth the sale of the property at that time on the execution.

The defendant's testimony tended to show that all the property described in the declaration except the oxen, was sold upon the execution against the plaintiff in the suit in which they were attached, and the proceeds applied thereon; that the oxen were originally sold by Merriam to Collins by a conditional sale, by the terms of which they were to become the plaintiff's property

41

upon the payment of one hundred dollars, to be paid within a year and a half from the time of the sale : that Merriam, before bringing his suit against Collins, had sold the oxen to the defend-dant Perkins ; that Collins had abused the oxen, while in his possession, so that they were in a much worse condition than when he took them, and of much less value, and had threatened that nothing should be left of them but the pelts and bones when the time for returning or paying for them should arrive; that the defendant did not attach them on the writ, but took them as their owner, and on account of such abuse of them by Collins, and with Collins' consent; that as the owner of the oxen, he sold them shortly after taking them for their full value [seventy-five dol-lars], and that the use of the oxen from the time he took them from Collins till the time when by the conditional sale Collins was to pay for, or return them to the owner, would be of no greater value than the expense of their keeping.

The defendant also introduced in evidence his return on the writ *Merriam* v. *Collins*, and testimony tending to show the con-sent of Collins to the continuance of the case, as detailed in the suit *Collins* v. *Merriam*, ante p. 622.

The court held, as to the notice and continuance of the suit, that the notice was sufficient, and that the continuance was taken with the consent of Collins.

The court further found upon the evidence in the case, that the. defendant, when he took the oxen from Collins, attached them and took them by his authority as an authorized person, and not as the owner, but that he did at that time own them, by purchase of Merriam, subject to Collins' interest in them by the conditional sale; that Perkins, immediately after the attachment, claimed to keep them as owner, and as owner sold them in February, for their full value, seventy-five dollars; that the oxen when he took them were in worse condition than when Collins received them of Merriam, and of less value ; that Collins had not used and fed them as required by his agreement with Merriam, and had threat-ened to leave them nothing but hide and bones at the expiration of the time when they were to be paid for or returned; that the use of the cattle from the time Perkins took them to the time when Collins was to pay for or return them, was of no greater

Collins *v.* Perkins.

value than the expense of their keeping during the same time; that Perkins, after he took and before he sold the oxen, occasionally used them without the consent of Collins. The court also found that the defendant's servants occasionally used, in the business of the defendant, the other personal property attached by the defendant and described in the declaration, and without Collins' consent. The court held that Perkins, by such use of the personal property and of the oxen, became a trespasser *ab initio*, and that as to all the personal property sued for, except the oxen, as it had been sold and applied upon the execution *Merriam* v. *Collins*, and for the plaintiff's benefit, the plaintiff was entitled to recover as damages only the amount which such property had been diminished in value by the use of it by the defendant; that, as to the oxen, as they had been sold by the owner Perkins, for their full value, as their value when taken and when sold by the defendant, was less than the price which Collins by the bargain was to pay for them, and as it was admitted that Collins had paid nothing towards them, and had not offered to pay anything for them, Collins could recover as damages of the defendant only the loss of the use of them from the time Perkins took them to the time Collins was to have returned, or paid for them, deducting the expense of keeping them for the same time, but that for such loss he could recover.

Upon the trial the plaintiff insisted that the defendant, by using the property without Collins' consent, became a trespasser *ab initio*; that the defendant could not justify the taking or disposal of the property under the general issue; that the judgment in *Merriam* v. *Collins* was void for want of notice to Collins of the pendency of the suit; that the continuance of such suit operated as a discontinuance; that the defendant, Perkins, took the property in Rutland on the execution, and sold it in Mendon, without advertising it according to law; that he sold it on the execution without first calling on Collins and demanding pay on the execution, and therefore he claimed to recover the whole value of the property so sold.

But the court held otherwise, and rendered judgment for the plaintiff for three dollars damages and costs, to which the plaintiff excepted.

*R. R. Thrall*, for the plaintiff.

*Linsley & Prout*, for the defendant.

POLAND, J. The questions made in this case in relation to the validity of the attachment, and the regularity of the judgment in favor of Merriam against the plaintiff, have already been decided at the present term, in the case of *Collins* v. *Merriam*.

The using, or allowing property to be used by an officer holding the same under attachment, is ordinarily considered such an abuse of the officer's authority as to make him a trespasser *ab initio*. It would seem from the exceptions that the use in the present case was slight, and it is not stated whether it was with the knowledge or consent of the officer, but the county court held it was enough to make the defendant a trespasser *ab initio*, and put an end to his right under the attachment. The plaintiff has no ground to complain of the decision below in this respect.

This finding would of course entitle the plaintiff to recover the value of the property of the defendant, unless he subsequently received back the property, or the same was legally disposed of for his benefit. If either of these were done, it would go properly in mitigation of damages.

The defendant claims that all the property, except the oxen, was subsequently legally disposed of upon the execution in favor of Merriam against the plaintiff, and if this were so, it would be the same as if he had received back the property, and the plaintiff could only recover such damages as he sustained, and not the full value of the property; see *Yale* v. *Saunders*, 16 Vt. 243; *Stewart* v. *Martin*, *id.* 397, and cases cited by WILLIAMS, Ch. J., in the latter case.

The plaintiff makes three objections to the validity of the sale of the property by the defendant on Merriam's execution.

1. That the return does not show that he made demand of the plaintiff to pay the execution before proceeding to levy.

2. That the return shows the levy to have been in Rutland and the sale in Mendon.

3. That the return does not show that the property was advertised at the same place where it was sold.

It was decided in the case of *Dow* v. *Smith*, 6 Vt. 519, that the provision of the statute requiring the officer to make a demand of payment of the debtor before proceeding to levy, was *directory* merely, and the want of it did not invalidate the levy. The same was held in relation to a levy on real estate, in *Eastman* v. *Curtis*, 4 Vt. 616, though the statute form of a levy states a demand and neglect to pay. These decisions have ever since been followed.

Sec. 4, chap. 45, Comp. Stat. provides that the officer holding an execution for collection, shall advertize the property so taken, " by setting up at some public place in the town where such goods or chattels were taken, a notification, etc."

The defendant's return on the execution is dated at its commencement, at Rutland, and though he does not say that he levied on the property in Rutland, perhaps that is the fair and natural meaning. Whether the actual sale of property by an officer in a different town from that where the property was originally taken, and without the consent of the debtor, would make the sale void and the officer a trespasser, we do not find it necessary to decide. In the present case it appears the plaintiff resided in Mendon, and the property was attached there by the defendant. The probability is, that the defendant kept the property after the attachment and before the sale, in Rutland. When the property is originally taken by attachment in the town where the debtor lives, it would seem to be a far better compliance with the meaning and spirit of the statute, to require the sale on the execution to be there, than to hold that if the property was taken into another town to keep while under attachment, and levied upon there, the sale must be where the levy was made. The plaintiff would in the latter case have much better ground to complain than he has now.

The defendant's return on the execution states, that he advervised the property to be sold at public auction, at Harvey Wilkins', in Mendon, etc. The return does not state in terms, that the notification was set up at Wilkins', but such we think is its fair and natural meaning, and under the liberal rule of presumption that has obtained in the interpretation of officers' returns, and the validity and rightfulness of their official acts, this return shows a compliance with the statute.

The plaintiff claims also, that these proceedings can not be proved or taken advantage of by the defendant, even in mitigation of damages, under the general issue, but should have been specially pleaded.　It is true that in this State the rule requiring special justifications to be pleaded in actions of trespass, has been adhered to with great strictness.　At the recent term in Chittenden County it was decided that when the plaintiff's proof showed a full legal justification of the trespass by the defendant, the defendant could not take advantage of it under the general issue.* This certainly goes to the very extreme.　But it by no means follows, that it can not be shown to mitigate the damages without being pleaded.　If it had been pleaded, and pleaded truly, it would have been no legal justification, and it would be singular to require a party to plead an insufficient justification in order to use the same facts as evidence in mitigation.　It would hardly be claimed that a defendant could not show, even under the general issue, that the plaintiff had received back the property in reduction of the damages, without setting it up by special plea, but this is the same thing.

The general property in the oxen at the time they were taken, was in the defendant, by purchase from Merriam.　The defendant had a right by his contract with Merriam, to become the owner of them by paying the sum of one hundred dollars.　The time within which he was to make payment had nearly expired, he had paid nothing, and it is quite evident from the facts found, that he did not expect or intend to pay for them, and the court below found that he had not kept or used them in accordance with the contract, and that the cattle were not worth then as much as the plaintiff was to pay for them, by the sum of twenty-five dollars.

The question is not properly presented here, whether the defendant or Merriam would have been justified in taking the cattle away from the plaintiff, in consequence of his violation of the terms of the contract as to the proper keeping and use of them; as the court below held they could not, and the plaintiff can not complain of that.　The county court held that the plaintiff was entitled to recover for what the use of the oxen would

---

* *Briggs* v. *Mason et al.,* ante p. 433.

be worth till the contract expired. It is not claimed that the plaintiff could have suffered any other loss by their being taken away before the expiration of the contract.

We do not see how the case is to be affected by the fact that the defendant took the oxen as an officer, and included them, or the defendant's interest in them, in his return on the writ. This could not make it more than an illegal and tortious taking, and this the court held it to be.

We think the judgment below was in all respects correct, and the same is affirmed.